UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

HARRY W. ALBRIGHT, JR., et al.,

    Plaintiffs,

v.

CINCINNATI INSURANCE CO.,

    Defendant.
    _____/

Case No. 04-00099

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [70], DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [68], AND DENYING DEFENDANT'S MOTION TO STRIKE THE AFFIDAVIT OF RICHARD L. DARBY [80]**

    This case comes before the Court on the parties' cross-motions for summary judgment. The primary issue is whether Plaintiffs/Counter-Defendants Harry W. And Suzann F. Albright ("Plaintiffs") suffered any loss under their homeowners insurance policy due to an alleged lightning strike on August 22, 2001, for which Defendant/Counter-Plaintiff Cincinnati Insurance ("Defendant") is responsible. For the following reasons, the Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment. The Court also DENIES Defendant's Motion to Strike the Affidavit of Richard L. Darby.

**I.    Background**

    This litigation stems from Plaintiffs' problems with a complex and expensive computer control system installed in their 16,000 square foot Portage, Michigan home. This "home automation system" included an audio/video control system valued at approximately

$135,495, a electronic system valued at approximately $155,136, and a heating, ventilation, and air conditioning system valued at approximately $68,641.  (Doc. 69 Ex. D, E, F.)

On October 15, 2001, Plaintiffs filed an claim under their homeowners insurance policy with Defendant, claiming that on August 22, 2001, a lightning strike caused severe damage to their home automation system.  The insurance policy provides in part that Defendant insures "against risks of direct loss to property . . . if that loss is a physical loss to property . . . ."  (Doc. 71 Ex. A at 7.)[1]  Covered losses do not include those caused by deterioration, latent defect, or mechanical breakdown. (*Id.*) Moreover, the insurance policy excludes coverage for faulty design, workmanship, materials, or maintenance.  (*Id.* at 8.)

After Plaintiffs made their insurance claim, a number of people inspected their home to determine the cause of their problems and the cost of repair to the home automation system.  Defendant hired LWG Consulting to inspect Plaintiffs' home "with regard to the Albrights' claims of electrical loss or damage as the result of a lightning strike."  Donald J. Skaff, the director of consulting for LWG, states that "LWG inspected each item of property represented to have sustained loss or damage due to lightning. . . .  LWG found that none of the equipment made available for inspection at any of these site inspections[] sustained any direct physical loss or damage from lightning."  (*Id.* Ex. K.)

Defendant also requested NICE Network, Inc., "to verify the inventory and value of the equipment, and evaluate the reported scope of damage, repair/replacement options, and potential salvage recovery."  (Id. Ex. B at Ex. 9.)  On October 21, 2002, NICE issued

---

[1]This exhibit contains both a condominium policy and a homeowner policy.  The purpose of the condominium policy is unclear, as the parties do not reference it.  The page citations are to the document entitled, "Executive Form: Your Homeowner Policy," which is governs this case.

to Mr. Albright an "estimated loss and damage breakdown based on the physical damage to equipment verified as of this date." (*Id.* at Ex. 23.) It does not appear that NICE conducted its own analysis of Plaintiffs' equipment, but instead relied on the evaluations of several other people and companies. Based on this investigation, NICE concluded that several items in Plaintiffs' home were damaged, but that many problems were due to improper installation and wiring, poor workmanship, and software and programing problems. NICE estimated the repair and replacement costs for Plaintiffs' damaged items to total approximately $18,717 to $25,647. (*Id.*)

Plaintiffs hired another inspector, John Boluyt, to look at "issues in lite touch enclosures," an element of the home automation system. Mr. Boluyt noted a number of problems with the system, but concluded that "at the time of my inspection of Mr. Albright's home, I saw no physical evidence of a lightning strike." (*Id.* Ex. I.)[2] Instead, Mr. Boluyt found that the "[w]orkmanship of the initial installation is very poor." (*Id.*)[3]

Plaintiffs also present an affidavit by Richard Darby, an electrical contractor and former associate of Mr. Albright. Mr. Darby states in a March 30, 2002 letter that he stayed in Plaintiffs' house for three nights and discovered "random damage effecting [sic] the control systems and some of the equipment. It seems probable the lightening [sic] entered near the Main equipment room. Much of the physical damage seems to be related to this part of the house and landscape lighting." (Doc. 77 Ex. 1-B.) Although Mr. Darby assumes

---

[2]In Mr. Boluyt's report, which is attached to his affidavit, he offers the opinion that certain modules "are having problems because of some external cause. A few possibilities are water in the connections outside, lightning, shorted underground wires in combination with wet weather, etc."

[3]This statement comes from Mr. Boluyt's report.

that damage was caused by lightning, his purpose was not to render an opinion regarding the *cause* of Plaintiffs' electrical problems, but to determine the necessary repairs. In a May 4, 2005 hearing, Counsel for Plaintiffs assured the Court that Mr. Darby's testimony was relevant "precisely" for the limited purpose of damages, and not causation. (Doc. 71 Ex. L at 7.)[4]

In fact, the only evidence that lightning caused damage to Plaintiffs' home automation system is a letter from AMX, a manufacturer of amplifiers, to American Home Technology, Inc., stating that it had replaced the internal fuses of three of Plaintiffs' amplifiers because "[i]t appears these units have been subjected to some type of high voltage surge, most likely caused by a nearby lightening [sic] strike." (Doc. 77 Ex. 4.)

Therefore, while there is some suggestion that damage to Plaintiffs' home automation system is consistent with a lightning strike, there is no direct evidence of such an event. Indeed, Mr. Albright concedes that he never had anybody determine whether the equipment had been damaged by lightning. (*See id.* Ex. B at 65-68.) Given this lack of evidence, Plaintiffs attempt to show that the home automation system was working well before August 22, 2001, is not working well now, and thus a lightning strike must have caused the problem.

Plaintiffs rely heavily on the testimony of Richard Conklin, who worked on maintaining the home automation system. When Mr. Conklin was asked whether he noticed anything erratic about Plaintiffs' system in December of 2000 or February of 2001, he answered, "I don't think so. I—again, I—I don't—I don't know. If I would have, it seemed like we would

---

[4] This testimony was given before Magistrate Judge Scoville.

have noted it or we would have gotten some documentation about it." (*Id.* Ex. C at 111.) Mr. Conklin was not in a position to know all of the details about Plaintiffs' system, however: "I wanted David Perrin to be the real contact for Mr. Albright." (*Id.* at 45.)

Perhaps not surprisingly, therefore, David Perrin's experiences paint a much clearer picture. Mr. Perrin was the president of Building Technologies, Inc., the company that monitored Plaintiffs' system.[5] Well before the alleged lightning strike of August 22,[6] Mr. Perrin stated in a letter that "[i]n May of 2001 we were asked to service a Sharp projector that became non-operational after a lighting [sic] strike was experienced at the . . . Albright Residence. It was noted that several other pieces of equipment in the house also became erratic and some non-operational after that incident." (Doc. 70 Ex. G.) Several dated invoices and receipts verify that the projector damage occurred in May of 2001, and Mr. Perrin states in his deposition that the date noted in his letter "had to be" correct. (*Id.* Ex. F at 74.) Furthermore, in June of 2001, Mr. Perrin prepared a list of over fifty various complaints that Plaintiffs had about their system. (*Id.* Ex. F.)[7] Mr. Perrin describes the purpose of this list as follows:

> I think the analysis was trying to find a source of any electrical irregularities in the house to try to eliminate one source at a time to find out what possibly could be causing a flashing light on a light signal that shouldn't be flashing,

---

[5]The complex relationship between Harry Albright, Richard Conklin, David Perrin, and others, is discussed in Defendant's Brief in Support of its Motion for Summary Judgment. (*See* Doc. 71 at 4-5 & n.1-2.)

[6]The letter itself is undated, but Mr. Perrin now recalls that it was written contemporaneously: "I think I was just documenting my recollection of the course of events . . . ." (Doc. 70 Ex. F at 74.)

[7]This list, the "Albright Project System Review," appears at the end of Mr. Perrin's deposition.

and then it would mysteriously go away, stuff like that. . . .  And sometimes when you have a variation of voltage up or down in any kind of an electrical component, you can have that kind of thing go on.  So the objective was to try to eliminate sources.

(*Id.* at 36-37.)

In late July of 2001—still a month prior to the alleged August 22 lightning strike—a company called Prodigy Electric, Inc., investigated the electricity flow in Plaintiffs' house. After the three-day investigation, Thomas Nabozny of Prodigy noted, "Judging from the numbers I do not see anything that is out of the ordinary."  Mr. Nabozny's report does not end there, however.  He concludes that "what ever [sic] is causing the voltage spikes or other abnormalities in the electrical system, it has to happen when I have the analyzer hooked up, in order to record it, and make an informed decision."  He offered to return "to install the analyzer on the circuit(s) that is running the entertainment center, when it is in use."  (*Id.* Ex. H.)

Taken together, this evidence demonstrates that several months before the alleged lightning strike of August 22, 2001, Plaintiffs were experiencing numerous problems with their home automation system, particularly regarding the flow of electricity.  These problems led to property damage which, interestingly enough, Plaintiffs once attributed to a separate lightning strike to their home.[8]  Others suggested that poor workmanship was to blame.  Whatever the cause, there is scant evidence to suggest that Plaintiffs suffered any damage due to a lightning strike to their home on August 22.

---

[8]According to Wikipedia, "The saying 'lightning never strikes twice in the same place' is false.  The Empire State Building is struck by lightning on average 100 times each year, and was once struck 15 times in 15 minutes."  Wikipedia: The Free Encyclopedia, http://en.wikipedia.org/wiki/Lightning (last visited June 7, 2006).

Plaintiffs filed this lawsuit in July of 2004, as Defendant tried to reach a settlement of their claim. Defendant has offered to cover the three amplifiers repaired by AMX, as well as a stereo receiver and a satellite receiver. Defendant has not conceded that lightning caused damage to these items, however. (*See* Doc. 71 at 10-11.)

## II.   Standard of Review

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the Court must "construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Id.* The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather,

there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III. Discussion

#### A. Cross-Motions for Summary Judgment

When determining liability under an insurance policy, "the 'insured bears the burden of proving coverage, while the insurer must prove that an exclusion to coverage is applicable.'" *Heniser v. Frankenmuth Mut. Ins.*, 534 N.W.2d 502, 505 (Mich. 1995) (quoting *Arco Ind. Corp. v. Am. Motorists Ins. Co.*, 531 N.W.2d 168, 181-82 (Mich. 1995) (Boyle, J., concurring)). Thus, pursuant to the terms of their homeowners insurance policy, Plaintiffs must first prove that they suffered "a physical loss to property" which is not caused by, among other things, deterioration, latent defect, or mechanical breakdown. (Doc. 71 Ex. A at 7.) If Plaintiffs prove such a loss, Defendants bear the burden of proving the existence of an exclusion, such as faulty design, workmanship, materials, or maintenance. (*Id.* at 8.)

In their Brief in Support of Motion for Summary Judgment, Plaintiffs spend several pages arguing that this case is governed by *American Guaranty and Liability Insurance Co. v. Ingram Micro, Inc.*, 2000 U.S. Dist. LEXIS 7299 (D. Ariz. April 19, 2000), which held that the loss of computer programming information and necessary custom configurations constituted "property damage" for purposes of an insurance contract. *Id.* at *8-9. Plaintiffs argue forcefully that as a matter of law, the loss of programing information and configurations necessary to run a home automation system should be covered as "property" under an insurance policy. Plaintiffs next argue that the homeowners policy requires payment for loss "even if a portion of the system is obsolete." (Doc. 69 at 8.)

8

Defendant avoids these issues entirely. Instead, Defendant simply argues that Plaintiffs have failed to present competent evidence to support their theory that they suffered a physical loss to property subsequent to a lightning strike on August 22, 2001. To the contrary, all of the evidence suggests that whatever problems Plaintiffs are experiencing with their home automation system existed well before the date of the alleged incident. Plaintiffs' complex system appears to have been plagued by electricity flow problems due to deterioration, latent defect, mechanical breakdown, or faulty installation, which Plaintiffs attempted unsuccessfully to remedy.

Caught off-guard, Plaintiffs respond by pointing to several "admissions of physical damage" by Defendant. A cursory inspection, however, reveals that none of these is an "admission" at all, and particularly not an admission of physical damage by lightning. For example, Defendant maintains that offering to provide coverage for a small number of stereo components, its consultant, Andrew Fahey, was merely "attempting to reach an amicable settlement of the claim . . . ." (Doc. 79 at 12.) Defendant "will honor this agreement, although no evidence was ever presented that this equipment suffered damage from a lightning strike on August 22, 2001 as opposed to one occurring years prior, or suffered damage from prior voltage spikes, electrical irregularities," or product defects. (*Id.*)

Plaintiffs further argue that three exhibits to Defendant's deposition of Mr. Albright are "admissions" by Defendant itself. Of course, these documents, which were not prepared by Defendant, cannot reasonably be called party admissions. Moreover, like Defendant's offer to settle Plaintiffs' claim, the documents are evidence of nothing more than damage. They do not support Plaintiffs' theory that the damage stems from an August 22, 2001

9

lightning strike, as opposed to problems with the electrical wiring, product defects, or some other cause of voltage spikes.

The first document is a letter from NICE Networks, Inc., regarding "audio and video equipment *reported as* damaged by lightning." (Doc. 77 Ex. 2 (emphasis added).) Thus, the letter is not itself evidence of lightning damage. Moreover, the same letter states that "based on NICE Network's inspection, many of the inventory items being quoted for replacement may not be damaged." (*Id.*) The second document is the final report by NICE which gives the repair and replacement cost for a number of damaged items. This document relies on the findings of others, however, and reports no finding of a lightning strike. In fact, the report states that a number of problems appear to be caused by "poor workmanship" and software/programming problems. (*Id.* Ex. 3.) The final document is the letter from AMX stating that "it appears" that some of Plaintiffs' stereo units "have been subjected to some type of high voltage surge, most likely caused by a nearby lightening [sic] strike." (*Id.* Ex. 4.) This speculative report apparently provides a basis for Defendant's settlement offer, but even so, it does not constitute evidence of an August 22, 2001 lightning strike.

Plaintiffs conclude,

> Interestingly, the procedural posture of this case was there was supposedly no questions of fact which would warrant cross Motions for Summary Judgment. It was the Plaintiffs' understanding that [Defendant] in choosing this method of resolving this matter[] did not contest that the lightning strike occurred . . . . Rather it was the Plaintiffs' understanding that [Defendant] claimed the damages caused by the lightning were not covered under the policy. Such a dispute would be ripe for summary judgment determination. . . . Unfortunately, given the fact that [Defendant] has converted this case into a factual dispute on the degree of damage, the court has no alternative[] but to deny both Motions currently before it.

10

(Doc. 77 at 3.)

This excerpt displays a misunderstanding of Rule 56. It is unfortunate that Defendant's argument caught Plaintiffs by surprise, thus depriving Plaintiffs of the opportunity to argue the issue that they believe to be the most important.[9] But Plaintiffs arguments are irrelevant if no covered loss occurred. Because Plaintiffs bear the burden of proving that a covered loss has occurred, Rule 56(c) mandates summary judgment unless they can present evidence of that essential element to their case. *See Celotex*, 477 U.S. at 322-23 (1986). As noted above, the central inquiry for purposes of these cross-motions is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Plaintiffs have failed to demonstrate the existence of a "physical loss to property" covered under their insurance policy, i.e., not caused by deterioration, latent defect, or mechanical breakdown. (Doc. 71 Ex. A at 7.) While they claim that an August 22, 2001 lightning strike caused damage to their home, there is no evidence upon which a reasonable jury could make such a finding.[10] Even viewing the evidence in the light most favorable to Plaintiffs, the few documents alluding to a possible lightning strike do not establish that it actually occurred, especially as alleged by Plaintiffs. Instead, the evidence

---

[9]It is equally unfortunate that because of Plaintiffs' limited briefing on the issue of whether lightning damage actually occurred, the Court has been deprived of an adequately developed record.

[10]This assumes that such an incident would give rise to insurance coverage. Defendant has not contested the issue.

11

demonstrates that the problems with Plaintiffs' home automation system existed well before August 22, 2001, and were due to deterioration, latent defect, or mechanical breakdown.

Moreover, even assuming that the damage to Plaintiffs' home automation system is covered under their insurance policy, the evidence suggests that an exclusion to coverage applies, such as faulty design, workmanship, materials, or maintenance. (*Id.* at 8.) Several pieces of evidence point to faulty wiring and software issues as the source of Plaintiffs' problems. Plaintiffs have failed to rebut this evidence.

### B. Defendant's Motion to Strike the Affidavit of Richard L. Darby

Defendant has filed a Motion under Federal Rules of Evidence 401 and 402 to strike the affidavit of Richard L. Darby, who states that it "seems probable the lightening [sic] entered near the Main equipment room." (Doc. 77 Ex. 1-B.) As noted above, Mr. Darby's affidavit is of limited evidentiary value, since his purpose was to determine the amount of damages, rather than causation. In their Brief in Response to Defendant's Motion, Plaintiffs specifically affirm that Mr. Darby's affidavit was "precisely" for the limited purpose of proving damages. (*See* Doc. 87 at 4.) Although Mr. Darby's affidavit is irrelevant to the primary issue of causation, the Court need not strike it from the record. Damages would have been relevant if Plaintiffs had first proven causation.

### IV. Conclusion

Plaintiffs adhere to the notion that "[c]ausation . . . is not in dispute in this case," and apparently believe that Defendant "does not dispute causation." (Doc. 87 at 2.) Plaintiffs' position is puzzling, since Defendant's briefs make clear that the parties do *not* "agree that lightning struck the Albright home and caused some level of damage." (*Id.* at 3.) Plaintiffs'

failure to present evidence of causation, and thus of a loss covered by their insurance policy, is fatal to their claim.

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment. The Court further DENIES Defendants' Motion to Strike the Affidavit of Richard L. Darby.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: June 20, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 20, 2006, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager